OPINION OF THE COURT
Eve Preminger, S.
At issue in this insolvent estate are the rights of a subordinate secured lienor upon the sale of the encumbered property by the Public Administrator.
The principal asset of the decedent’s estate, apart from minor items of tangible personalty, is a cooperative apartment *56 in which the decedent resided. That interest was encumbered by two liens: a primary lien of $287,950 to secure a purchase-money loan by Apple Bank for Savings (Apple), and a subordinate lien of $22,000 to secure payments to Lowell Hotel Associates (Lowell), a judgment creditor. Financing statements for both liens were duly recorded and the stock certificate and lease to the apartment were delivered to Apple.
Subsequent to the decedent’s death on November 7, 1988, there was a default on the primary obligation and Apple sought to enforce its rights. Apple’s counsel contacted the Public Administrator to seek the appointment of a fiduciary for the estate. The Public Administrator thereafter obtained letters of administration on June 15, 1989.
Apple’s counsel corresponded with the Public Administrator’s counsel, formally advising of its client’s status as primary lienor and requesting that the property be sold to satisfy the lien. The Public Administrator advertised the property for sale, and on March 30, 1990, an auction sale was conducted in this court, at which three prospective bidders appeared. However, two of the bidders declined to raise the opening bid, and the property was knocked down to the opening bidder for the upset price of $380,000.
Unfortunately, the contract with that bidder later failed to close, necessitating a readvertising of the property and a second auction sale, under the same terms and conditions as the first, which was held on June 7, 1990. No bids were made at that auction, and Apple was permitted to "redeem” the property for the sum of $358,533.12, the amount then due and owing to it, plus the sum of $6,000 for the Public Administrator’s attorneys’ fees. Apple then promptly marketed the property for resale and found a prospective purchaser. A contract was entered into, and the purchaser’s attorney conducted a judgment and lien search which revealed the existence of Lowell’s subordinate lien.
Apple seeks to have this court expunge Lowell’s lien, on the ground that it was discharged by the auction sale. It is Apple’s position that the sale constituted a foreclosure, pursuant to UCC article 9, and that, as purchaser, it took the property free of the subordinate interest (UCC 9-504 [4] [a]).
Lowell takes a somewhat different view, contending that the sale was not a foreclosure, but merely an administrator’s sale of an estate asset. As such, the administrator could not convey any greater interest than the decedent owned, and thus, the *57 property was sold subject to all liens of record, including Lowell’s.
UCC 9-504 provides no particular method for conducting a sale by a secured party after default, stating only that "(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing”. In addition, the only requirement of notification of the sale to other secured parties is where "the [foreclosing] secured party has received * * * written notice of a claim of an interest in the collateral” from the other secured party (UCC 9-504 [3]).
Apple contends that, not having received any such written notice from Lowell, it was not required to furnish Lowell with a notice of the sale. Interestingly, it appears that Apple did conduct a search of some kind on two separate occasions; its counsel represents that "[a]ll properly secured parties were notified of the sale * * * a judgment and lien search for personal property * * * did not show [Lowell’s] lien.” Yet, later, when Apple learned of the filing statement from its prospective purchaser, a third search by it finally disclosed Lowell’s filed lien.
The crucial issue is therefore whether this court interprets the Public Administrator’s acts as being performed as agent for Apple, or as agent for the estate. Apple relies on its conduct toward, and communications with, the Public Administrator to support its contention that the Public Administrator acted in its behalf. In a letter to the Public Administrator’s counsel dated April 11, 1989, Apple’s counsel requests that the Public Administrator proceed to seek letters of administration "and forward any fees and costs to this office since my client is the first lienor.” In a subsequent letter dated August 11, 1989, Apple’s counsel requests the Public Administrator’s counsel to "notice the aforesaid apartment for sale twice a week for three (3) weeks in a newspaper of your choosing [it is not clear whether this request was complied with] * * * Any and all charges in connection with this matter should be referred to this office for payment.” It is clear that Apple considered the Public Administrator to be acting in its behalf.
However, it is not so clear that the Public Administrator actually consented to or did act in this capacity, or that anyone else was or should have been aware of this presumed *58 relationship. Correspondence from counsel for the Public Administrator does not evidence any such indication. The notice of sale published under the heading "Auction Sales” in the New York Times on Sunday, May 6, 1990, lists six different properties being sold by the Public Administrator in addition to the one here at issue; there is no indication whatsoever of any agency capacity, and no mention of Apple. Moreover, one of the stated terms is that "[a]ll properties are sold in an 'as is’ condition.” Whether "as is” refers to physical condition or liens of record may be subject to interpretation, but does not seem to bespeak the "free and clear” which one would normally associate with a foreclosure sale (see, e.g., UCC 2-312 [2], Official Comment 5, which provides that "[this] [s]ubsection * * * recognizes that sales by sheriffs, executors, foreclosing lienors and persons similarly situated are so out of the ordinary commercial course that their peculiar character is immediately apparent to the buyer and therefore no personal obligation is imposed upon the seller who is purporting to sell only an unknown or limited right”).
Apple points out that, even if Lowell had been present at the auction sale, it would not have bid in excess of Apple’s bid, an amount which it contends has already resulted in a substantial loss to it. While this may be true, the court cannot second-guess Lowell’s intent, or its ability to dispose of the property on a more favorable basis than Apple’s. Moreover, from Lowell’s point of view, inasmuch as its lien would survive the sale, it lost nothing by the sale and thus had no incentive to bid.
Disenfranchising a legitimate creditor is a severe penalty, and should be exercised carefully and sparingly, and only when a clear mandate exists to support such action. In the instant case, a determination that the Public Administrator acted on Apple’s behalf would necessarily endorse the concept that the Public Administrator may serve more than one master, and severely undermine both the public policy of having the Public Administrator protect the interest of all estate creditors, and the public’s right to believe that the Public Administrator acts exclusively as an estate representative (SCPA 1123). Accordingly the application to expunge the subordinate lien is denied.